No. 509

First Circuit

BOUANCHAUD v. STANDARD COFFEE COMPANY

(December 3, 1929.  Opinion and Decree.)
(December 30, 1929.  Rehearing Granted.)
(June 30, 1930.  Opinion and Decree on Rehearing.)

Bouanchaud · & Kearney, of New Roads, attorneys for plaintiff, appellee.

Michel Provosty, of New Orleans, attorney for defendant, appellant.

MOUTON, J.  The sheriff and tax collector of Pointe Coupee parish, alleging that defendant company was pursuing the business of a peddler in that parish in the year 1928, without first obtaining state and parish licenses, brought this suit for the collection of these licenses.

The district judge rendered judgment against defendant for $200, amount for

state license, but declined to hold the company for the parish license for lack of necessary proof.

The sole question here is as to whether defendant company was a peddler.

The business establishment of defendant is located in New Orleans. The defendant denies it is engaged in the business of hawking or peddling, but says that on the contrary it is engaged in selling coffee, tea, spices, and other merchandise, direct to the householders on the orders of its salesmen usually given by housewives a week or two prior to the shipment of these articles from New Orleans, from where they are shipped for delivery. Defendant contends that the base of its business operation is in New Orleans, from where its goods are distributed on orders given to its salesmen.

I. C. Richard, the record shows, was its route salesman in the parish of Pointe Coupee, where the goods in question were purchased.

The question presented is as to whether Richard went from house to house, place to place, etc., selling the goods he carried with him and delivered them at the time or immediately after the sale or without returning to the base of operation between the taking of the order and the delivery of the goods. If he made the sales with delivery at the time or immediately after the sale, or without returning to the base of operation between the order and delivery of the goods, defendant was a peddler under the terms of section 18, par. D, of Act No. 205 of 1924, as added by Act No. 241 of 1928, p. 348, sec. 2, amending section 2 of Act No. 299 of 1926, upon which this suit is brought.

The proof shows that defendant is engaged in the sale of coffee, but shows also that it sells other articles of commerce. It is in evidence that it usually sold coffee, and, in some instances, other goods to various customers in Pointe Coupee, on orders which had been previously taken by its salesman for delivery. In the sales thus effected defendant could not be, under the provisions of the statutes above referred to, classified as a peddler.

The record shows that coffee was generally sold under these prior orders and was brought to the homes of the purchasers in a truck from which delivery was made by Richard; also that other goods, such as soap, black pepper, etc., were likewise carried in the truck. It is also clearly established that soap and black pepper were sold by Richard to several housewives without any prior or previous orders given to him therefor, as was the case when coffee was purchased. The proof is that the soap and pepper thus sold were paid for cash and were delivered to them from the truck at the time of the sales, and certainly without returning to the base of the business operation of defendant company between the orders and delivery. The defendant was therefore peddling these goods through its salesman, Richard, and hence was a peddler under the terms of the statutes above cited.

Counsel for defendant says, in the case of Oden, Tax Collector, vs. Zachery, 6 La. App. 594, that this court held otherwise.

In that case it was shown that Bradford traveled in an automobile every two weeks in Allen parish, where he made the sales of the goods. In referring to Bradford, we said:

"Bradford says that defendant would take orders on one trip and make deliveries on the next trip."

This statement of the court gives the gist of the question therein submitted and shows clearly that there was a return to the base of business operation which was in the parish of Rapides, between the taking of the orders, and the delivery. It also repels any inference to the effect that the goods were bought for cash, and immediately delivered, which was shown in the instant case.

Counsel for defendant relies with confidence on the case of Commonwealth vs. Ober, 12 Cush. (Mass.) 498. It is not necessary for us to make an extensive analysis of the opinion therein rendered. In that suit the court referred to the salesman as being a carrier, "delivering goods to persons who had previously ordered them," which the record shows Richard was usually doing for defendant company. In referring to a purchase which had been effected under a prior order, the court in that case said:

"It was, in effect, a purchase of the same buyer from the same seller, of the same commodity, to a larger amount than previously ordered."

In this case:

"It was in effect a purchase by the same buyers from the same seller."

But right here the similarity between this and the cited case stops and ceases. And here, the purchasers were certainly not "of the same commodity, to a larger amount previously ordered" which constituted the basis for the decision quoted by counsel, in which the court concluded that the purchaser had simply enlarged his previous order. Here, the purchases were not made to enlarge any prior orders.

The soap and black pepper were sold on the spot, for cash, and were delivered at the time from the truck in which they were carried by Richard with the coffee which he usually delivered every two weeks. These purchases were contracts distinct and separate from the ordinary purchases by previous orders. Evidently, they certainly did not constitute any enlargement of previous orders that had been placed with defendant company.

Our interpretation of our statutes is not at variance with the decision relied on by counsel for defendant, but is rather in harmony therewith as we understand the ruling of the court.

The record shows that Richard made about 17 sales of this soap and pepper. By a process of elimination adopted by counsel, he contends that these sales should be reduced to 12. Basing himself on this reduction, or even admitting that 17 sales were actually effected, counsel contends that these were isolated transactions and do not afford sufficient proof to show that defendant was engaged in peddling as a business. We are of the opinion that the various sales to which we have referred show that the defendant was a peddler, and that is all which is required under the statutes for the imposition of a license.

Finally, counsel contends that defendant being a corporation cannot travel on foot or on horseback, and does not come within the definition of peddler given in Act No. 299 of 1926, as amended by Act No. 241 of 1928, upon which this suit is based.

True it is that corporations are ideal beings that can be conceived only by the understanding, and are incapable of the performances to which counsel refers, still it is obvious that they can travel in autos, trucks, on foot, and on horseback through their salesmen or agents, which is the case here.

Section 1 of Acts No. 299 of 1926 and No. 241 of 1928 provides for the levy of an annual license on all persons, association of persons, or corporations, etc., and, in section 2 requires the enforcement of a license from every peddler, hawker, etc.

The defendant is shown to be a peddler, for the reasons above stated, and comes within the grasp of those provisions of the statutes, which made it liable for a state license as was held below.

## ON REHEARING

LeBLANC, J. Defendant's application for a rehearing having been granted, this case is before us again for further consideration.

A complete statement of· the issues involved is contained in the original opinion herein handed down, and it is unnecessary to repeat them here.

The same defenses are urged as were presented in the original hearing, and, as a further ground on which it resists the demand made on it to pay a peddler's license, defendant calls attention to the fact that, after the decision in this case, the Supreme ·Court of the state, in the case of State vs. Louisiana Coca Cola Bottling Co., 169 La. 167, 124 So. 769, declared that section of the License Law relied on by the plaintiff unconstitutional. As we understand that decision, only a part of the section covering peddlers' licenses under the License Law of 1926 was held unconstitutional, and this because of a defective title.

The direct point involved in the decision, was that, inasmuch as the Legislature, in attempting, by section 2 of Act 299 of 1926, to amend the title to and section 18 of Act 205 of 1924, incorporated in the body of the section, which defined peddlers, an ad-

ditional class of persons without having so expressed its intention to·do so in amending the title, so much of section 2 of the act of 1926 was stricken with nullity for failure to comply with the requirements of section 16 of article 3 of the Constitution of 1921.

It happened that the state was seeking to enforce the collection of a license against the defendant in that case as a peddler coming under the new classification embodied in the amending section of the law which defined peddlers, and, because of the defective title which rendered that part of the law unconstitutional, the state's claims were rejected. In the present case, the license is sought to be enforced against defendant as a peddler in the ordinary and generally accepted meaning of that term, and the one the Legislature no doubt had in mind when it provided in the first part of section 18 of the Act of 1924 as amended by section 2 of the Act of 1926 that·"each and every peddler and hawker * * * shall pay an annual license." The same question of constitutionality cannot be raised, as the title of the act is indicative of what is contained in the body, so far as the term "peddler" taken in its general sense is involved, and therefore the decision in the case cited has no application here.

Further consideration of another ground of defense, however, has led us to a different conclusion than the one we reached in the original opinion and decision rendered herein. The defense referred to is the one to the effect that the act of peddling, if ·there was any done in this case, was done by Richard, the salesman, and not by the defendant, and, as a principal cannot be taxed as a peddler for the acts of its agents, defendant is not liable for the license which the state is endeavoring to exact from it. Richard's acts in selling

goods a few times for cash, directly from the truck to the customer, were not only not sanctioned by the defendant, his employer, but, if anything, were in violation of the rules of their organization. Their method of conducting their business appears to be the result of a studied plan to get around the peddler's license law, as their secretary in his testimony admits that, if their business left itself open to such license, it could not possibly be run profitably.

Peddlers' licenses are imposed in an effort to regulate a practice which from earliest times was regarded with a great deal of suspicion. "They (in speaking of peddlers) have been in disfavor because of their annoying methods of solicitation, their financial irresponsibility growing largely out of their transient nature and their tendency to defraud in the sale of their own goods and to commit crimes collateral to their admittance to homes of householders." 21 Ruling Case Law, p. 182.

From the evidence in this record, it appears that defendant's business is of a nature that cannot be said to be anything like the class of business just described.

It is the act of peddling which the law seeks to control by exacting the license; and, as it is the person who actually solicits and makes the sale and delivery of the goods who is the peddler, he, naturally, is the one the law is trying to reach, and not the owner of the goods. "The person actually making the canvass, sale and delivery is the peddler, and it is immaterial that title to the goods is in another for whom he is selling, because it is not the ownership of the goods that is important but the manner of making the sale." 21 Ruling Case Law, p. 186.

It is obvious, then, that a salesman, especially one who as in this case takes it upon himself, without authority, and in violation of his instructions, to exercise the functions and carry on the business of peddling his principal's goods, cannot make the latter liable for a peddler's license.

"It is clear that an agent may be a peddler while selling the goods of his principal even if he is compensated by salary rather than by commissions on his sales. * * * On the other hand the principal who does not make the canvass is not within the ordinary meaning of the word 'peddler' and it seems that the ordinary statute aims at the occupation only and not at the person who is in fact the peddler. As it is the business or occupation that is taxed, not the goods, and as it is a matter of no concern to the local authorities, who owns the goods proposed to be peddled, or what are the relations and connections between the persons who proposed to sell and any other person who may be the owner, the owner and principal is generally held not liable under the statute." 21 Ruling Case Law, p. 203.

We have been referred to none, nor have we been able to find any decision of our Louisiana courts, bearing on this precise point, but the rule as laid down in the authority quoted from is supported by a number of decisions from other courts therein cited, and, as it appears to us to be sound and logical, we can very well follow it in this case.

Having adopted this view, it follows that we are bound to hold that our former judgment and the judgment of the lower court which condemns this defendant to pay a peddler's license were both erroneous, and they should be set aside.

It is therefore now ordered that the judgment of the lower court and the original judgment herein rendered by this court be and they are both set aside, annulled, and reversed, and that there be judgment in favor of the defendant and against the plaintiff, dismissing his suit at his cost in both courts.